```
          UNITED STATES DISTRICT COURT
           DISTRICT OF NEW HAMPSHIRE
```

Richard Gelinas

    v.                            Civil No. 17-cv-387-JL
                                      Opinion No. 2018 DNH 180

U.S. Social Security
Administration, Acting
Commissioner


**ORDER ON APPEAL**

Richard Gelinas has appealed the Social Security Administration's ("SSA") denial of his application for a period of disability and disability insurance benefits between the date he alleged his disability began and the onset date determined by the administrative law judge ("ALJ") at the SSA. The ALJ ruled that, despite several severe impairments, Gelinas retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy between March 15, 2013, and August 26, 2015, and thus was not disabled during that period.[1] See 20 C.F.R. §§ 404.1505(a), 416.905(a). The Appeals Council denied Gelinas's request for review, with the result that the ALJ's decision became the final decision on his application, see id. § 404.981. Gelinas then appealed the

---

[1] The ALJ determined that Gelinas was disabled beginning on August 26, 2015.

decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Gelinas has moved to reverse the ALJ's decision. See LR 9.1(b). The Acting Commissioner of the SSA has cross-moved for an order affirming the decision. See LR 9.1(c). After careful consideration, the court denies Gelinas's motion and grants the Acting Commissioner's motion.

I. **Applicable legal standard**

The court limits its review of a final decision of the SSA "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). It "review[s] questions of law de novo, but defer[s] to the Commissioner's findings of fact, so long as they are supported by substantial evidence," id., that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (quoting Bath Iron

Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003)).

Thus, though the evidence in the record may support multiple conclusions, the court will still uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The court therefore "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

## II. **Background**[2]

The ALJ invoked the requisite five-step sequential evaluation process in assessing Gelinas's request for disability and disability insurance benefits. See 20 C.F.R. §§ 404.1520, 416.920. After determining that Gelinas had not engaged in substantial gainful activity after the alleged onset of his disability on March 15, 2013, the ALJ analyzed the severity of

---

[2] The court recounts here only those facts relevant to the instant appeal. The parties' more complete recitation in their Joint Statement of Material Facts (doc. no. 14) is incorporated by reference.

his impairments. At this second step, the ALJ concluded that Gelinas had the following severe impairments:

> spondyloarthropathy with chronic back pain and radiculopathy; L5-S1 degenerative disc disease with protrusion; moderate to severe diffuse lumbar spine facet joint osteoarthritis; gout; diabetes; hypertension; morbid obesity; status post cerebral hemorrhage; learning disability; depression; bilateral knee osteoarthritis with very mild narrowing of medical joint compartments, left knee flattening of the lateral femoral condyle with osteophyte off lateral left tibial plateau; right knee osteophyte emanating off tibial plateau; DVT (deep vein thrombosis; right ankle osteoarthritis, Os trigonum fused to talas, advanced subtalar joint osteoarthritis; ankle talonavicular and calcaneocuboid joint osteoarthritis, Achilles and plantar calcaneal spurs; reading disorder; mild degenerative joint disease of bilateral hips, right, greater than left.[3]

At the third step, the ALJ found that Gelinas's severe impairments did not meet or "medically equal" the severity of one of the impairments listed in the Social Security regulations.[4] See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

After reviewing the medical evidence of record, medical opinions, and Gelinas's own statements, the ALJ concluded that he retained the RFC to perform sedentary work, see 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he could:

> lift up to 20 pounds occasionally, and would only be able to stand or walk for a total of 2 hours in an 8-hour workday and sit for 6 hours, in an 8-hour

---

[3] Admin. Rec. at 21-22.

[4] Id. at 22-24.

workday.  He was limited to occasional postural
maneuvers.  He would need to avoid exposure to
extremes of heat or cold, wetness, humidity, excessive
vibrations, and avoid even occasional exposure to
unprotected heights and could not be around dangerous
moving machinery.  He retained the mental capacity for
simple, unskilled tasks.[5]

Finding that, even limited in this manner, Gelinas was able to perform jobs that exist in significant numbers in the national economy between his alleged onset date and August 26, 2015, see 20 C.F.R. §§ 404.1566 and 416.966, the ALJ concluded his analysis and found that Gelinas was not disabled within the meaning of the Social Security Act during that time period.[6]

The ALJ then refined Gelinas's RFC, finding that, beginning on August 26, 2015, "due to pain and medical treatment, [Gelinas] would need frequent unscheduled breaks, and would be off task 25% of the time and miss more than 3 days of work a month."[7]  Given those additional limitations, the ALJ concluded Gelinas could perform no jobs that exist in significant numbers in the national economy and thus was disabled.[8]

---

[5] Admin. Rec. at 24.

[6] Admin. Rec. at 32-33.

[7] Id. at 30.

[8] Id. at 33.

**III. <u>Analysis</u>**

Gelinas challenges the ALJ's determination of his disability onset date. Specifically, he contends that the ALJ erred in concluding that he was not disabled between his alleged onset date of March 15, 2013, and the ALJ's determined onset date of August 26, 2015. He further contends that the ALJ erred by making that determination without consulting a medical advisor. As outlined below, the ALJ did not err on either front.

"The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." Titles II & XVI: Onset of Disability (SSR 83-20), 1983-1991 Soc. Sec. Rep. Serv. 49, at *1 (S.S.A. 1983). The ALJ is tasked with determining the claimant's onset date of disability. Id. Gelinas bears the burden of proving it. 20 C.F.R. § 404.1520; Purdy, 887 F.3d at 9 (claimant bears burden of proof at first four steps of the five-step process).

"In disabilities of nontraumatic origin," such as Gelinas's, "the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20 at *2.

> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the

> medical or work evidence is not consistent with the
> allegation, additional development may be needed to
> reconcile the discrepancy. However, the established
> onset date must be fixed based on the facts and can
> never be inconsistent with the medical evidence of
> record.

Id. at *3.

The ALJ concluded that Gelinas could perform sedentary work with a variety of limitations until August 26, 2015, the date Gelinas underwent an examination for lower back pain by Ms. Stephanie Diamond PA-C, who observed that his back pain had worsened, and who arranged for him to undergo EMG/NCS testing of his bilateral lower extremities. Taking into account Gelinas's worsened back pain, the ALJ concluded that Gelinas could not perform even sedentary work without missing several days a month after August 26, 2015. In designating that as Gelinas's onset date, the ALJ thoroughly accounted for the medical evidence of record, relying on the fact that the medical evaluations and opinions prior to August 26, 2015 all support the conclusion that Gelinas could perform sedentary work with a variety of limitations.

**Physical limitations.** With respect to Gelinas's physical limitations, the ALJ cited a July 31, 2014 functional capacity evaluation by J. Samson, MS, OTR/L, CWCE, CEAS, who opined that Gelinas could perform a level of work consistent with sedentary

7

work with occasional postural limitations.⁹  Similarly, Dr. Anthony Ippolito, Gelinas's rheumatologist, indicated in October 20, 2014, that while Gelinas suffered from arthritic pain and fatigue, he was able to perform sedentary work with physical limitations generally consistent with those in the ALJ's RFC determination for this period.¹⁰

The ALJ also considered the medical opinion of Dr. Steven Olive, another of Gelinas's treating physicians, who concluded that Gelinas could perform work at the sedentary level in February 2015.  Finally, the ALJ accounted for the State agency non-examining medical consultant, Dr. Barton Nault, who concluded on August 19, 2014, that Gelinas could perform light work with no limitations.  The ALJ discounted that opinion, affording it little weight for failure to account for Gelinas's subjective pain complaints.¹¹

Gelinas challenges the fact that the ALJ discounted both Samson's and Dr. Ippolito's conclusions that Gelinas could only "occasionally" use his hands and arms.  With respect to Samson, the ALJ explained that he did so because "it seems the evaluator only relied on the claimant's subjective pain complaints" in

---

⁹ Admin. Rec. at 826-27.

¹⁰ Id. at 1055-56.

¹¹ Id. at 29.

8

drawing that conclusion and because "the claimant was able to perform well with his hands and he had a normal range of motion."[12] And he discounted Dr. Ippolito's conclusion as inconsistent with the fact that Gelinas's impairments related to his back and legs and Dr. Ippolito's finding of a normal strength and range of motion.[13]

Gelinas also contends that, to the extent the ALJ afforded great weight to a January 7, 2016 opinion by Dr. Ippolito with respect to the post-August 2015 time period, he ought have afforded the same weight to that January 7, 2016 opinion with respect to the period before August 26, 2015. But, as the ALJ observed, Dr. Ippolito's opinions are inconsistent. He opined in 2016 that Gelinas's impairments prevented him from sitting more than two hours and standing more than four hours, and that his impairments would make him absent from work more than four days per month.[14] In 2016, he also opined that these impairments had existed since March 15, 2013.[15] In February 2015, by contrast, Dr. Ippolito opined that Gelinas was capable of a

---

[12] Id. at 27.

[13] Id. at 29.

[14] Id. at 1219-21.

[15] Id. at 1217

9

range of sedentary work.[16] The ALJ considered these inconsistencies and concluded, based on Dr. Ippolito's February 2015 statement, that he "did not believe the limitations began at the claimant's alleged onset date."[17]

Though Gelinas takes issue with the ALJ's treatment of a small aspect of both Samson's and Dr. Ippolito's reports, he points to no other evidence in the record, unaddressed by the ALJ, that contradicts those conclusions. Though these reports may support the alternative conclusions proposed by Gelinas, they also adequately support the ALJ's conclusions. The court will not disturb the ALJ's findings under these circumstances. Irlanda Ortiz, 955 F.2d at 769.

**Mental limitations.** With respect to Gelinas's mental limitations, the ALJ relied on an August 12, 2014 consultative psychological examination by Dr. Thomas F. Burns, PhD, and a January 23, 2015 psychiatric evaluation by Dr. James Kates, MD. The ALJ accorded Dr. Burns's opinion weight as "consistent with the claimant's ability to perform unskilled tasks"[18] and noted that "there is nothing in [Dr. Kates's] opinion to suggest that [Gelinas] would not be able to perform unskilled mental tasks

---

[16] Id. at 1055-57.

[17] Id. at 31.

[18] Admin. Rec. at 27.

10

due to his mental impairment."[19]  Finally, the ALJ accounted for the state agency non-examining psychological consult, Dr. Laura Landerman, whose mental RFC assessment he found consistent with the medical record and Dr. Burns's conclusions.

The ALJ discounted Dr. Burns's and Dr. Landerman's conclusions that Gelinas would not be able to read at all.  In doing so, he noted that Dr. Burns did not test Gelinas's literacy and relied only on self-reports inconsistent with the fact that Gelinas completed high school with passing grades in English, and that Dr. Landerman relied on Dr. Burns's report.[20]  The ALJ concluded that, instead, Gelinas "is capable of very basic reading and understanding simple instructions."[21]

Gelinas argues that the ALJ erroneously rejected Dr. Burns's conclusion that Gelinas was illiterate.  Specifically, he contends that the fact that he completed high school with a passing grade in English does not conclusively establish his literacy.  But it need not do so.  Even on that basis, the ALJ concluded only that Gelinas was "capable of very basic reading and understanding simple instructions."[22]  That

---

[19] Id. at 28.

[20] Id.

[21] Id. at 29.

[22] Id.

11

conclusion is consistent with Gelinas's representation to Dr. Kates that he "could only read at the first grade level."[23] Here, again, some evidence in the record -- specifically, Gelinas's own testimony -- may support an alternative conclusion; but where the ALJ's is supported by substantial evidence, as it is here, the court will not disturb it.[24] Irlanda Ortiz, 955 F.2d at 769.

**Medical advisor.** Finally, Gelinas argues that the ALJ erred by establishing an August 26, 2015 disability onset date without consulting a medical advisor.[25] "Where 'precise evidence is not available' and thus there is a 'need for inferences,' SSR 83-20 instructs the ALJ to call a medical advisor." Fischer v. Colvin, 831 F.3d 31, 35 (1st Cir. 2016) (quoting SSR 83-20, 1983 WL 31289, at *3) (alterations omitted). Here, however, as in Fischer, "[t]he ALJ did not rely upon the absence of medical evidence but rather the existence of 'precise' medical evidence

---

[23] Id. at 904.

[24] Gelinas suggests that the ALJ erred because he did not contact Gelinas's former employer to obtain more evidence concerning his limited ability to read and write. See Plaintiff's Mem. (doc. no. 10-1) at 5. But the burden of proving his limitations at this stage rests on Gelinas, not the ALJ. 20 C.F.R. § 404.1520; Purdy, 887 F.3d at 9. In any event, evidence of a limited ability to read and write would be consistent with the ALJ's conclusion that Gelinas was capable only of "very basic reading."

[25] Plaintiff's Mem. (doc. no. 10-1) at 11.

. . . when concluding that [Gelinas's] impairments had not reached disabling severity prior to" August 26, 2015. Here, the ALJ had the benefit of, and relied on, several medical opinions, issued prior to that date, to the effect that Gelinas could perform a range of sedentary work. "This precise medical evidence eliminated the need for the ALJ to infer that [Gelinas's] onset date preceded" August 26, 2015. Id.

## IV. Conclusion

For these reasons, the Acting Commissioner's motion to affirm[26] is GRANTED and Gelinas's motion to reverse and remand the Acting Commissioner's decision[27] is DENIED. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: September 6, 2018

cc: D. Lance Tillinghast, Esq.
    Robert J. Rabuck, AUSA

---

[26] Document no. 13.

[27] Document no. 10.

13